UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIAN LOFGREN,

    Plaintiff,

v.

AIRTRONA CANADA and
SAM BARBERIO,

    Defendants.

Case No. 2:13-cv-13622
Honorable Laurie J. Michelson

---

**OPINION AND ORDER DENYING DEFENDANTS' MOTION TO AMEND
FINDINGS OF FACT OF AND CONCLUSIONS OF LAW [47]**

---

In October 2015, this Court held a multi-day bench trial. Following trial, it carefully reexamined all the evidence, including the testimony, and studied both parties' proposed findings of facts and conclusions of law. The Court then issued a 32-page opinion setting forth its findings and entered a judgment awarding Plaintiff Brian Lofgren $82,757.85. Defendants AirTrona Canada and Sam Barberio now ask this Court to revisit these findings, claiming that the Court erred in five ways. But under Federal Rule of Civil Procedure 59(e), courts are not to address arguments that could have been raised prior to the entry of judgment. And, for the most part, Defendants attack the Court's reasoning on issues that were clearly in dispute at trial but were not well developed in the parties' post-trial briefing. For this reason and those that follow, Defendants' motion will be denied.

**I.**

Although the Court assumes familiarity with its findings of fact and conclusions of law, in brief, the Court concluded that (1) in July or August 2011, when Defendant AirTrona Canada agreed to provide Plaintiff Brian Lofgren equipment and training so that Lofgren could operate a

used-car sanitization business in exchange for a fee, the parties reached a "franchise" agreement under the Michigan Franchise Investment Law, (2) as a franchisor under the MFIL, AirTrona Canada breached its obligation to provide Lofgren with a certain disclosure statement, (3) Defendant Sam Barberio was jointly and severally liable with AirTrona Canada for this failure, (4) as a remedy, Lofgren was entitled to rescission of the parties' agreement and reasonable attorney's fees, and (5) the amount of Defendants' liability (including attorney's fees) was $82,757.85. *See generally Lofgren v. AirTrona Canada*, No. 2:13-13622, 2016 WL 25977 (E.D. Mich. Jan. 4, 2016).

Defendants (primarily Barberio given AirTrona Canada's default) now move under Federal Rule of Civil Procedure 59(e) to amend that judgment, challenging every one of the above findings save for the conclusion that AirTrona Canada failed to provide the required disclosure. (Dkt. 47, Defs.' Mot. to Amend.)

## II.

"[T]he purpose of Rule 59 is to allow the district court to correct its own errors, sparing the parties and appellate courts the burden of unnecessary appellate proceedings." *York v. Tate*, 858 F.2d 322, 326 (6th Cir. 1988). Even so, the grounds for amending a judgment are limited. "A district court may grant a Rule 59(e) motion only to (1) correct a clear error of law, (2) account for newly discovered evidence, (3) accommodate an intervening change in the controlling law, or (4) otherwise prevent manifest injustice." *Moore v. Coffee Cty., TN*, 402 F. App'x 107, 108 (6th Cir. 2010); *see also Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 395 (6th Cir. 2007) ("[A] motion under Rule 59(e) must either clearly establish a manifest error of law or must present newly discovered evidence." (internal quotation marks omitted)).

Although Defendants do not explicitly identify one of these four grounds for relief, a fair reading of their motion suggests that they believe the Court committed clear legal or factual error: "The Court should take this opportunity to correct five errors." (*See* Defs.' Mot. at 1.)

## III.

The Court considers Defendants' five claims of error in turn. None justify amending the judgment.

## A.

Under the Michigan Franchise Investment Law, a "franchise" is an agreement "to which all of the following apply:"

> (a) A franchisee is granted the right to engage in the business of offering, selling, or distributing goods or services under a marketing plan or system prescribed in substantial part by a franchisor.
>
> (b) A franchisee is granted the right to engage in the business of offering, selling, or distributing goods or services substantially associated with the franchisor's trademark, service mark, trade name, logotype, advertising, or other commercial symbol designating the franchisor or its affiliate.
>
> (c) The franchisee is required to pay, directly or indirectly, a franchise fee.

Mich. Comp. Laws § 445.1502(3).

Barberio argues that the Court erred in finding that Lofgren had proven—by a mere preponderance—that the 2011 transaction was a "franchise" because the evidence did not show that the first and third elements of the above definition were satisfied. (Def.'s Mot. at 2–10.) The Court addresses these two arguments in turn.

## 1.

Barberio claims that in selling Lofgren upgraded equipment in July or August 2011, AirTrona Canada did not "grant[]" Lofgren "the right to engage in the business of offering, selling, or distributing goods or services under a marketing plan or system prescribed in

3

substantial part by" AirTrona Canada, Mich. Comp. Laws § 445.1502(3)(a). (Defs.' Mot. at 4.) Barberio claims that AirTrona Canada had granted this right in October 2010, or, at least, before the 2011 transaction. (*Id.*) In support, Barberio notes that AirTrona Canada and Lofgren began working together in October 2010, and points out that two of the emails that the Court cited to find that AirTrona Canada had granted Lofgren rights consistent with a franchise were dated October 2010 and November 2010—not July 2011 (or later). (*Id.*)

The Court does not believe Barberio's timing argument demonstrates clear error. The Court acknowledged in its prior opinion that "Lofgren was working with AirTrona Canada . . . by at least late 2010 (which was well before the mid-to-late-2011 upgrade)" and cited in support the October and November 2010 emails. *Lofgren*, 2016 WL 25977, at *5. The Court further acknowledged that "an argument could be made that in providing upgraded equipment to Lofgren in 2011, AirTrona Canada did not 'grant[]' Lofgren the right to use its marks or marketing plan—it had already done so in late 2010 or early 2011." *Id.* But one reason the Court rejected this argument as precluding a franchise agreement in mid-2011 was that the Court understood the MFIL's definition of "franchise" to encompass agreements that "*re-grant* the right to use a mark or operate under the franchisor's marketing plan." *Id.* (emphasis added). Barberio has not shown (or even attempted to show) why this interpretation of the MFIL was error.

Moreover, the fact that AirTrona Canada and Lofgren were working together in the fall of 2010 does not mean that AirTrona Canada had, at that time, "granted" Lofgren the right to use its marks and prescribed a marketing plan. To the extent that Barberio maintains that it was inconsistent for the Court to, on the one hand, cite the October and November 2010 emails in support of its conclusion that there was ultimately such a grant but, on the other hand, not find a

4

grant in the fall 2010, the Court perceives no inconsistency. The October and November 2010 emails were merely part of the bigger picture. Although the emails would have been more probative of the Court's conclusion had they been sent a year later than they were, that the emails preceded the 2011 transaction does not make them irrelevant to the nature of AirTrona Canada and Lofgren's legal relationship at that later time.

Barberio also asserts that "prescribed by" in § 445.1502(3)(a) means "required to," and the evidence the Court cited does not show that AirTrona Canada required Lofgren to follow any particular rules in operating his business. (Defs.' Mot. at 6–7.)

This argument is not properly before the Court. In his post-trial proposed findings of fact and conclusions of law, Barberio made no argument that the word "prescribed" in § 445.1502(3)(a) meant "required." Nor did Barberio even attempt to construe or apply the corresponding Michigan Administrative Code provision relied upon by the Court (i.e., Michigan Administrative Code R. 445.101(4)(c)(iv)). Barberio instead focused on an entirely different element of the "franchise" definition (the fee requirement). (*See* Barberio's FFCOL ¶¶ 131–40.) It is not proper for Barberio to wait for the Court to analyze the issue of whether AirTrona Canada granted Lofgren the right to run a business under an operating plan it "prescribed," and then challenge that analysis with a new argument. Barberio was well aware that Lofgren had the burden to establish all three elements of the "franchise" definition but, in response, elected not to argue why the evidence did not satisfy the term "prescribed." That election precludes him from choosing a different course now. *See Howard v. United States*, 533 F.3d 472, 475 (6th Cir. 2008) ("[A]s this court has repeatedly held, Rule 59(e) motions cannot be used to present new arguments that could have been raised prior to judgment.'" (citations omitted)); *FDIC v. World Univ. Inc.*, 978 F.2d 10, 16 (1st Cir. 1992) ("Rule 59(e) motions are aimed at reconsideration, not

5

initial consideration. Thus, parties should not use them to raise arguments which could, and should, have been made before judgment issued.").

2.

Barberio also asserts that there was no "franchise" because Lofgren was not "required to pay, directly or indirectly, a franchise fee," Mich. Comp. Laws § 445.1502(3)(c). (Defs.' Mot. at 8–10.) Under the MFIL, "'Franchise fee' means a fee or charge that a franchisee or subfranchisor is required to pay or agrees to pay *for the right to enter into a business under a franchise agreement*, including but not limited to payments for goods and services." Mich. Comp. Laws § 445.1503(1) (emphasis added). Barberio says that any fee that Lofgren paid AirTrona Canada in August 2011 was not "for the right to enter into a business" because vehicle sanitization (as opposed to deodorization) was merely the "addition of a product line" and "not a new business." (Defs.' Mot. at 9.) Barberio points out that both before and after the 2011 transaction, Lofgren serviced the same type of customers (car dealerships) and continued to work with the same company (AirTrona Canada). (*Id.*) "If," says Barberio, "the sanitization business was being run through a new entity known as AirTrona Sani Services, Mr. Lofgren might have an argument that he was being offered a new franchise[.]" (Defs.' Mot. at 8–9.)

The Court also finds this argument to be procedurally improper. To be sure, Barberio argued in his proposed findings of facts and conclusions of law that Lofgren did not pay a franchise fee as that term is defined by the MFIL. But Barberio's argument focused on whether Lofgren paid more than the bona fide wholesale price and whether the equipment upgrade was optional or, in the language of the MFIL, "required." (*See* Barberio's FFCOL ¶¶ 132–40.) He did not argue that the fee Lofgren paid was not "for the right to enter into a business." As for his closing argument, it is true that Barberio asserted that the 2011 transaction was "like a [L]ittle

Caesars coming and saying, 'We're going to sell Greek salads, so sell them in addition to your pizza.' They're still a franchise, they just have another product line." (Trial Tr. Vol. IV at 33–35.) In other words, Barberio did argue that there was already a franchise relationship prior to the 2011 transaction. But this argument was not focused on the fee paid and whether the fee met the statutory language in Michigan Compiled Laws § 445.1503(1). Thus, Barberio's claim that any fee Lofgren paid was not "for the right to enter into a business" is not properly before the Court. *See Howard*, 533 F.3d at 475; *FDIC*, 978 F.2d at 16.

And even if it were, the argument does not show clear error. As acknowledged above and in the Court's prior opinion, Lofgren and AirTrona Canada were working with one another prior to the 2011 transaction. But, during this time, Lofgren was not engaged in sanitization and, as explained in the prior opinion, the evidence did not support a finding that AirTrona Canada had yet "granted" Lofgren the right to use its marks and prescribed marketing plan. Thus, the parties' pre-existing relationship did not amount to a "franchise" and that relationship did not preclude a finding that the money that Lofgren paid to consummate the 2011 transaction was "for the right to enter into a business under a franchise agreement."

Regarding the franchise-fee element of a "franchise," Barberio further claims that the Court erred because there was "no evidence of a 'bona fide wholesale price'" and "selling equipment at a price marked up from 'bona fide wholesale' does not in and of itself create a franchise fee. That was the holding of *Kenaya Wireless*[*, Inc. v. SSMJ, L.L.C.*, No. 281649, 2009 WL 763496 (Mich. Ct. App. Mar. 24, 2009)]." (Defs.' Mot. at 10.)

This argument (or a very similar one) was previously raised. And in addressing it, the Court found that Lofgren had paid more than the bona fide wholesale price given the prices AirTrona Canada itself provided in completing the August 2011 invoice and in completing the

7

corresponding customs invoice. *Lofgren*, 2016 WL 25977, at *8. Barberio's conclusory assertion that there "was no evidence of a 'bona fide wholesale price'" does not explain why those two invoices were not such evidence.

As for *Kenaya Wireless*, the court there found that the alleged franchisor's sale of phones to the putative franchisee at a $10 mark-up did not amount to a franchise fee. 2009 WL 763496, at *1–2 (Mich. Ct. App. Mar. 24, 2009). But the evidence that the $10 mark-up did not exceed the bona fide wholesale price was much stronger than the evidence in this case. In *Kenaya*, the alleged franchisor's representative stated in an affidavit that the company's "prices were at or below its competitor's prices," that "the phones were minimally marked up so as to account for [the company's] shipping and general overhead expenses," and, ultimately, that "the phones were sold at a bona fide wholesale price." *Id.* at *2. In contrast, Barberio's testimony regarding pricing was indefinite. He imprecisely testified that selling equipment to Lofgren "cost [AirTrona Canada] more money than [it] received." (Barberio Dep. at 21–23.) And when asked specifically about the pricing on the August 2011 invoice, Barberio testified, "I don't do any pricing. Jim Cairns does all the pricing." (Barberio Dep. at 167; *see also id.* at 168.) Moreover, although not referencing the 2011 transaction in particular, Barberio acknowledged that AirTrona Canada sold equipment for a profit. (Barberio Dep. at 79–80.) Thus, *Kenaya Wireless* is readily distinguishable from this case.

\* \* \*

In sum, the Court does not find that the arguments properly before the Court on a Rule 59 motion demonstrate that it clearly erred in finding that, more likely than not, the 2011 transaction between AirTrona Canada and Lofgren amounted to a "franchise" under the MFIL.

**B.**

Barberio next says that the Court erred in concluding that he was jointly and severally liable with AirTrona Canada under § 32 of the MFIL. That section provides:

> A person who directly or indirectly controls a person liable under this act, a partner in a firm so liable, a principal executive officer or director of a corporation so liable, a person occupying a similar status or performing similar functions, *an employee of a person so liable who materially aids in the act or transaction constituting the violation*, is also liable jointly and severally with and to the same extent as the person, *unless the other person who is so liable had no knowledge of or reasonable grounds to believe in the existence of the facts by reason of which the liability is alleged to exist*.

Mich. Comp. Laws § 445.1532 (emphases added). The Court found that "Barberio [was] a responsible party under § 32 at least because he [was] an employee of [AirTrona Canada] who materially aid[ed] in the act or transaction constituting the violation." *Lofgren*, 2016 WL 25977, at *11. Barberio asserts that this was error because "employee" has a "very specific meaning, incorporating concepts of payment, authority and taxation, among other things." (Defs.' Mot. at 10.) And, Barberio asserts, there was "no evidence that AirTrona Canada exercised sufficient control over Mr. Barberio to create an employment relationship with him." (*Id.* at 11.)

This argument is also not properly before the Court. In his proposed findings of facts and conclusions of law, Barberio conclusorily stated that "[t]here was no violation of Section 32 because Mr. Barberio is not a responsible party under the statute." (Barberio FFCOL ¶ 146.) Barberio marshaled no evidence in support of this claim and did not attempt to construe any of the terms in § 32, let alone the term "employee." As stated, it is not proper for Barberio to wait until after the Court conducts the analysis to argue an issue known to be in dispute. *See Howard*, 533 F.3d at 475; *FDIC*, 978 F.2d at 16.

And even if the argument should be addressed on its merits, the Court is not persuaded that it clearly erred. In examining the authorities Barberio cites in support of this argument, it

9

appears that Barberio's reference to "payment, authority and taxation, among other things" refers to the economic-reality test. *See Buckley v. Prof'l Plaza Clinic Corp.*, 761 N.W.2d 284, 290–91 (Mich. Ct. App. 2008) (providing that "economic reality test is the most common tool for discerning whether an employee-employer relationship exists."). Under this test, courts determine whether someone is an employee by considering the "totality of the circumstances around the work performed." *Id.* The "[e]mphasis," however, is on these factors: "(1) the control of a worker's duties, (2) the payment of wages, (3) the right to hire and fire and the right to discipline, and (4) the performance of the duties as an integral part of the employer's business towards the accomplishment of a common goal." *Id.* (internal quotation marks and alterations omitted).

Using this test, the evidence still preponderates in favor of finding that Barberio was an employee of AirTrona Canada. First, as this Court suggested in its findings, Barberio performed duties that were an integral part of AirTrona Canada's business: he performed research and development for AirTrona Canada; AirTrona Canada's president, Jim Cairns, "would have asked for [Barberio's] opinion" about which rules franchisees should follow; he was responsible for informing Cairns of customer's business requirements and desired growth and investment; and, when Lofgren attempted to settle his dispute with AirTrona Canada, Barberio acted on behalf of AirTrona Canada in those negotiations. *Lofgren*, 2016 WL 25977, at *11. In addition, although Barberio now claims he was not paid by AirTrona Canada, in his proposed findings of fact he provided that AirTrona Canada paid him $20,000 per year in commissions. (Dkt. 40, Defs.' Proposed FFCOL ¶ 28; *see also* Barberio Dep. at 87.) Moreover, although Barberio claimed the designation was arbitrary, Cairns had assigned Barberio the designation of CEO/COO. (Barberio Dep. at 23; SB Ex. 16.) Thus, even under the more nuanced economic-reality test, Barberio has

not clearly shown that Lofgren failed to demonstrate (by a mere preponderance) that Barberio was an "employee" of AirTrona Canada under § 32.

Barberio alternatively argues that even if he was an "employee" under § 32 of the MFIL, he falls within that section's safe harbor: he had "no knowledge of or reasonable grounds to believe in the existence of the facts by reason of which the liability is alleged to exist." In particular, Barberio argues that "[i]f Mr. Cairns built in an additional price that the Court concludes was a 'franchise fee,' Mr. Barberio was not involved." (Defs.' Mot. at 11–12.)

Again, this argument is not properly before the Court. In his proposed findings of facts, Barberio merely parroted the language of the statute: "The exception in Section 32 applies: where a person has 'no knowledge of or reasonable grounds . . .'" (Dkt. 40, Proposed FFCOL ¶ 147.) He made no effort to develop this argument or marshal evidence in support. Barberio certainly did not make the nuanced argument that he could not have reasonably been aware that Lofgren paid AirTrona Canada more during the 2011 transaction than the cost of the equipment he received. As such, the Court does not find it proper to allow Barberio to now make that argument. *See Howard*, 533 F.3d at 475; *FDIC*, 978 F.2d at 16.

Moreover, although the Court agrees with Barberio that he did not know how AirTrona Canada (or Cairns specifically) came up with the pricing of the items on the August 2011 invoice or the customs invoice, this does not necessarily mean that Barberio lacked reasonable grounds to believe that Lofgren was being charged more than the price AirTrona Canada set for the equipment. In particular, the August 2011 invoice valued the items sold to Lofgren at $28,148. (Pl.'s Ex. 32.) But the July 2011 invoice indicated that Lofgren was to pay AirTrona Canada $35,000 for "1 Franchise Michigan Location" (Pl's Ex. 31)—this is more than the total on the August 2011 invoice. And the Court believes that Barberio had reasonable grounds to know

11

these facts: he admitted that the 2011 transaction was "his" sale (Barberio Dep. at 167), and, consistent with that testimony, the August 2011 invoice from AirTrona Canada to Lofgren states, "Direct All Inquiries to: Sam Barberio" and the July 2011 invoice also includes Barberio's name.

### C.

Barberio next claims that rescission was not the proper remedy. (Defs.' Mot. at 12.) According to Barberio, the failure to provide Lofgren with the disclosure statement was merely a technical violation of the statute and, moreover, Lofgren "knew everything that would have been contained in the disclosure[.]" (Defs.' Mot. at 12.) Citing *Two Men & a Truck/Int'l Inc. v. Two Men & a Truck/Kalamazoo, Inc.*, 955 F. Supp. 784, 785 n.1 (W.D. Mich. 1997), and *Nielsen v. McCabe*, 442 N.W.2d 477, 481 (S.D. 1989), Barberio asserts that courts have concluded that "a technical violation, without fraud, does not justify rescission." (Defs.' Mot. at 13.)

Barberio made this argument in his proposed findings of facts and conclusions of law (Defs.' FFCOL ¶¶ 152, 154–55), and the Court addressed it in its prior opinion, *see Lofgren*, 2016 WL 25977, at *12–14. The Court explained in part that "the plain language of § 31 does not require a substantial breach or an intent to deceive to invoke the remedy of rescission. . . . [I]t says that a person who violates § 5 or § 8 'is liable' to the purchaser of the franchise 'for damages or rescission.'" *Lofgren*, 2016 WL 25977, at *12. The Court further found that although the court in *Two Men & a Truck/International Inc. v. Two Men & a Truck/Kalamazoo, Inc.*, 949 F. Supp. 500 (W.D. Mich. 1996), refused to grant rescission under the MFIL where the equities tipped strongly in favor of the franchisor, the equities did not so strongly favor Barberio or AirTrona Canada. 2016 WL 25977, at *13. Because Barberio presents no new argument on this issue, and because the issue was adequately addressed in this Court's prior opinion, the claim that rescission was not a proper remedy does not justify amending the judgment. *See Sault Ste.*

*Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998) ("A motion under Rule 59(e) is not an opportunity to re-argue a case."); *Keweenaw Bay Indian Cmty. v. United States*, 940 F. Supp. 1139, 1141 (W.D. Mich. 1996) ("Where a moving party attempts to obtain a reversal of a judgment by offering the same arguments previously presented, the proper vehicle for relief is an appeal rather than a motion to alter or amend." (internal quotation marks omitted)).

**D.**

Barberio and AirTrona Canada (despite AirTrona Canada's default, it can contest the amount of liability) next claim that the Court's rescission award was too high. Setting aside attorney's fees and interest, this Court found that AirTrona Canada should pay Lofgren $22,433.39 (U.S.) to unwind the 2011 franchise agreement. *Lofgren*, 2016 WL 25977, at *14. Defendants say this number should have been $6,852. (Defs.' Mot. at 14.) In particular, Defendants say that the $15,000 (Can.) Lofgren paid to the ozone-generator manufacturer as part of the 2011 transaction should not have been included in the Court's rescission calculation and that rescission applies "at most[] to the $20,000 [Can.] Mr. Lofgren wired to AirTrona Canada." (Defs.' Mot. at 14.) Barberio further asserts that he is not responsible for AirTrona Canada's decision not to deliver the second ozone generator to Lofgren and, of the $20,000 (Can.) that Lofgren wired to AirTrona Canada, $5,000 (Can.) was for that second generator. So, says Barberio, he is responsible for at most $15,000 (Can.). Accepting the Court's finding that (aside from the ozone generator) Lofgren received products valued at $8,148 (Can.), Barberio concludes that he is liable only for $15,000 less $8,148, or $6,852 (Can.). (Defs.' Mot. at 14.)

This argument is improper for the same reason that many of Barberio's others are: Barberio did not make it in his proposed findings of fact and conclusions of law. Although

13

Lofgren provided a rescission calculation, Barberio did not. And given that Lofgren's accounting was flawed (he did not consider the benefits he received in the 2011 transaction), the Court was forced to conduct the necessary analysis on its own. As stated before, it is not proper for Barberio to wait until after the Court completes its work to raise a new argument. *See Howard*, 533 F.3d at 475; *FDIC*, 978 F.2d at 16.

And even if the Court were to consider Barberio's rescission calculation, it does not demonstrate clear error. As an initial matter, Barberio's calculation ignores the old van and old equipment that Lofgren returned to AirTrona Canada as part payment for the 2011 transaction. Lofgren valued that at $5,000 (U.S.) and there was no evidence to the contrary.

More significantly, Barberio's claim that the Court incorrectly included in its calculation the $15,000 that Lofgren paid to the ozone-generator manufacturer, Simpson Environmental, is not persuasive. The August 2011 invoice that AirTrona Canada sent to Lofgren identifies the two ozone generators and even lists their serial numbers. (Pl.'s Ex. 32.) This suggests that it was AirTrona Canada, not Simpson, that was responsible for delivering the generators to Lofgren. And this suggestion is confirmed by the October 2011 customs invoice: it identifies as the exporter, "AirTrona – Canada" and lists, among the equipment to be exported, the ozone generator. (SB Ex. 23.) Accordingly, the Court finds that if the parties had unwound the 2011 transaction, Lofgren would have returned the generators to AirTrona Canada and not Simpson. AirTrona Canada would have then been required to return the generators to Simpson so that Simpson would be in position to refund the $15,000 that Lofgren paid to Simpson. It was thus correct to hold AirTrona Canada responsible for that amount and to include it in the rescission calculation.

Finally, the Court is also not persuaded by Barberio's conclusory statement that "he should not be liable for AirTrona Canada's decision not to deliver the second generator to Mr. Lofgren or refund his extra $10,000." (Defs.' Mot. at 14.) As noted, Barberio admitted that the 2011 transaction was "his" sale and the August 2011 invoice, which lists two generators, stated that all inquiries were to be directed to "Sam Barberio." (Pl.'s Ex. 32.)

### E.

Barberio also contests the Court's award of $45,822.13 (U.S.) in reasonable attorney's fees to Lofgren. Barberio asserts that Lofgren "submitted the totality of his legal bills, without any evidence supporting how much should be assessed against Mr. Barberio." (Defs.' Mot. at 14.) Barberio argues that because the records submitted by Lofgren's counsel show that "a significant amount of time was spent litigating the default against AirTrona Canada," he should not be assessed those fees. (*Id.*)

This is another argument that Barberio makes too late. Lofgren sought a default judgment in this case which included attorney fees as part of the damages and in ruling on that request this Court provided, "the parties' Joint Proposed Final Pretrial Order should propose how the Court should handle the issue of damages, and, in particular, whether a trial on Lofgren's damages attributable to Barberio (if any) should be consolidated with an evidentiary hearing on Lofgren's damages attributable to AirTrona Canada (for which liability has been established)." (Dkt. 32 at Pg ID 237.) The parties subsequently agreed to address the issue of damages during the bench trial (Dkt. 39 at Pg ID 272, 275–76), and, given the statute at issue, Barbiero knew (or should have known) that attorney's fees were on the table. Moreover, following trial, Lofgren submitted an accounting in support of his request for reasonable attorney's fees. Barberio said nothing about it. Nor did Barberio claim that the issue should be deferred for a later hearing. As this

15

Court stated in its prior opinion: "Having considered counsel's rate of $395.00 (U.S.) and the work performed in this case, *and given that Barberio has not contested the fee amount as unreasonable*, the Court will award Lofgren $45,822.13 (U.S.) in reasonable attorney's fees." *Lofgren*, 2016 WL 25977, at *14 (emphasis added). Again, a motion to amend judgment is not the proper place to make arguments that should have been made prior to entry of judgment. *See Howard*, 533 F.3d at 475; *FDIC*, 978 F.2d at 16.

Barberio further claims that attorney fees are "[t]ypically[] . . . the subject of post-trial proceedings." (Defs.' Mot. at 15.) But none of the cases he cites in support of this claim explicitly articulate such a rule, or indicate why the issue cannot be addressed in post-bench trial findings of fact and conclusions of law. Instead, each provides that where a party opposes the award of fees or contests their reasonableness, the party is entitled to a hearing. As stated, Barberio did not oppose the fee award or contest its reasonableness.

## IV.

As set forth above, Defendants' claims for this Court to amend the judgment are either procedurally improper or fail to demonstrate clear error. Defendants' Motion to Amend Findings of Fact and Conclusions of Law and Judgment Pursuant to Fed. R. Civ. P. 59(e) (Dkt. 47) is therefore DENIED.

SO ORDERED.

s/Laurie J. Michelson<br>
LAURIE J. MICHELSON<br>
UNITED STATES DISTRICT JUDGE

Dated: May 12, 2016

16

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on May 12, 2016.

                              s/Jane Johnson
                              Case Manager to
                              Honorable Laurie J. Michelson